No. 50,786

HAROLD A. MOORE, and E. LOUISE MOORE, d/b/a DAVENPORT APPLI-
ANCES, *Appellees,* v. PHILOMENA B. MUNTZEL, *Appellant.*

(642 P.2d 957)

Opinion filed April 3, 1982.

*Paul Hasty, Jr.,* of Wallace, Saunders, Austin, Brown & Enochs, Chartered, of Overland Park, argued the cause and *Donald D. Jarrett,* of Prairie Village, was with him on the brief for appellant.

*Thomas Francis Sullivan,* of McDonald & Dykes, of Overland Park, argued the cause and *John J. Alder* and *Douglas C. McKenna,* of Alder, Zemites, Nelson & McKenna, of Overland Park, were with him on the briefs for appellees.

The opinion of the court was delivered by

McFARLAND, J.: This is an action by a tenant against a landlord to recover damages sustained when the leased premises were destroyed by fire. The trial court held in favor of the tenant on a negligence theory. The Court of Appeals held the landlord was not negligent, as a matter of law, but remanded the case to the trial court for consideration of alternatively plead theories of liability. The matter is before this court on petition for review.

The facts are summarized as follows. The building in question, located at 5424 Johnson Drive, Mission, Kansas, was built in the late 1930's. It has apparently been in continuous use as commercial rental property although the nature of the business conducted therein has changed from time to time. The building is of a design to be leased as one unit for use by one tenant, and has been so leased. In 1967, the building was leased to the Davenports who did extensive remodeling and converted the premises into an

appliance store. On January 17, 1973, plaintiffs, Harold and E. Louise Moore, purchased the business and continued operation as "Davenport Appliances." At the time the plaintiffs took over the property, they entered into a new lease with the landlord, defendant Philomena B. Muntzel. The occupancy of the premises by the plaintiffs was contiguous with the occupancy of the Davenports, and defendant was not in possession at any time during the changeover.

During its use as an appliance store, the building was divided into three rooms with the center room being used for display of televisions, radios and stereos plus office space. The other two rooms were used for stock and display of both heavy and light appliances. The business, both in volume and nature, was essentially unchanged throughout the operation of the business by the Davenports and the plaintiffs. The plaintiffs experienced some electrical problems, including blown fuses in the two side rooms, and had paid a local electrical contractor for repair thereof. No repair work was done in the center room. Plaintiff did not request that defendant inspect or repair any electrical wiring nor did they advise defendant of any electrical problems.

On June 4, 1976, fire broke out in the leased premises doing extensive damage to the building and its contents. At the bench trial herein, conflicting evidence as to the cause of the fire was introduced. The trial court made findings relative to the fire causation, which are supported by substantial evidence, and will not be disturbed on review. For purposes of appellate review, such findings constitute the established facts.

The fire started in the eight to ten-inch space between the roof and the suspended tile ceiling in the center room at or near a junction box. The wiring was overfused. The wiring in the building was old and not in compliance with the present National Electrical Code. It is not claimed that the applicable building code required the wiring be updated to meet the present code.

The trial court found the defendant-lessor had a duty to inspect the wiring and the failure to do so constituted negligence. Having so concluded, the trial court did not consider the alternatively plead theories of breach of warranty and breach of contract. Judgment was entered in favor of plaintiffs in the amount of $88,599.19. Defendant appealed. The Court of Appeals in an unpublished opinion filed October 9, 1981, concluded the de-

fendant was not negligent as a matter of law, reversed the judgment, and remanded the case back to the trial court for consideration of the alternate theories.

The first issue on appeal is whether the trial court erred in finding the defendant negligent for failing to inspect the premises and thereby permitting the dangerous electrical condition to continue.

The trial court based the landlord's duty to inspect upon Restatement (Second) of Torts, §§ 360, 361 (1965), which provide:

"§ 360. Parts of Land Retained in Lessor's Control Which Lessee is Entitled to Use

"A possessor of land who leases a part thereof and retains in his own control any other part which the lessee is entitled to use as appurtenant to the part leased to him, is subject to liability to his lessee and others lawfully upon the land with the consent of the lessee or a sublessee for physical harm caused by a dangerous condition upon that part of the land retained in the lessor's control, if the lessor by the exercise of reasonable care could have discovered the condition and the unreasonable risk involved therein and could have made the condition safe."

"§ 361. Parts of Land Retained in Lessor's Control but Necessary to Safe Use of Part Leased

"A possessor of land who leases a part thereof and retains in his own control any other part which is necessary to the safe use of the leased part, is subject to liability to his lessee and others lawfully upon the land with the consent of the lessee or a sublessee for physical harm caused by a dangerous condition upon that part of the land retained in the lessor's control, if the lessor by the exercise of reasonable care

"(a) could have discovered the condition and the risk involved, and

"(b) could have made the condition safe."

The comment following Section 361 clearly shows the section is intended to apply to common areas such as hallways, elevators and stairways which, although remaining under the lessor's control, are for the use of the various tenants. The comment following Section 361 states:

"b. The rule stated in this Section applies to the maintenance of walls, roofs, and foundations of an apartment house or office building. It applies also to any other part of the land the careful maintenance of which is essential to the safe use of the rooms or offices or portion of land leased to the various lessees, such as the central heating, lighting, or water system."

The limitations of these sections were discussed in *Borders v. Roseberry*, 216 Kan. 486, 490-491, 532 P.2d 1366 (1975), wherein this court stated:

"When different parts of a building, such as an office building or an apartment house, are leased to several tenants, the approaches and common passageways normally do not pass to the tenant, but remain in the possession and control of the landlord. Hence the lessor is under an affirmative obligation to exercise reasonable care to inspect and repair those parts of the premises for the protection of the lessee, members of his family, his employees, invitees, guests, and others on the land in the right of the tenant. This exception is covered in Restatement, Second, Torts §§ 360 and 361 . . . ."

Clearly for either one of these sections to be applicable, the landlord must lease less than the entire premises and continue to control the unleased portion, a situation common in multiple occupancy office and apartment buildings.

The trial court found the defendant retained the requisite control over the ceiling space by virtue of the following lease provision:

"[T]he lessor or their agents, at reasonable times, may enter to view the premises and to make repairs which they may find necessary to protect the interest in said estate, it being understood and agreed, however, that the lessor shall not be bound to make any repairs or improvements at their own expense, except repairs to roof, outer walls, ceilings, downspouts, support for floors, window casings, window frames and structural portions of the demised premises."

The premises herein were leased in their entirety. The trial court confused the right to view provided by the lease with the right of control and its attendant duty to inspect as discussed in these Restatement sections. Such rights are inconsistent with each other. If the owner has control of the premises, obviously a right to view the premises is wholly unnecessary. It is only when the owner is giving up control that he has reason to retain a right to view.

It is important to bear in mind that the issue of negligence of defendant must involve violation of some duty arising independently of the contract. The lease is significant to this determination only in connection with whether the defendant had control of the premises as contemplated by §§ 360 and 361 of the Restatement.

We conclude the defendant, having leased the premises in their entirety to the plaintiffs, did not have control over the portion of the premises wherein the fire started and had no duty to inspect same. Therefore, the failure of the defendant to inspect the wiring on the premises could not, as a matter of law, constitute negligence.

Before concluding this discussion of negligence, it should be noted that *Borders*, cited by both parties, involved a patent defect known to the landlord. The defect arose from the landlord's incompleted repairs. Involved therein is a landlord's liability when he has knowledge of visible faulty repairs. The duties imposed upon a landlord under such circumstances are so different from a landlord's duty involving a latent defect, as herein, that little is to be gained from any further discussion of *Borders*.

Having concluded that defendant was not negligent as a matter of law, the judgment must be reversed and remanded with directions. We must determine the proper extent of the directions.

The Court of Appeals concluded that defendant was not negligent as a matter of law, reversed the judgment but remanded the case to the trial court for consideration of the alternately plead breach of warranty and breach of contract theories. Inasmuch as the matter had been fully tried with a complete record, there would be no reason to grant a new trial on the alternative theories. However, if these alternative theories are not legally viable, the directions on remand should be to enter judgment for the defendant.

The pertinent lease provisions are:

"Lessor does demise unto lessee the storeroom known and numbered as 5424 Johnson Drive, Mission, Kansas, to have and to hold the premises  .  .  .  .

"Lessee covenants that they will use said premises for the retail sale and service of appliances and for no other purpose.

"Lessee covenants that as further consideration of this lease, lessee will maintain air-conditioning, light fixtures and heating on the premises. Lessee will pay all utilities on the premises.

"Lessee covenants that they  .  .  .  will at the termination of the lease  .  .  .  deliver to the lessor the said premises, together with all future additions and erections thereon, vacant and unencumbered, in good and substantial repair, order and condition in all respects.

.  .  .  .  .

"In the event the demised premises shall be damaged or destroyed by fire, the elements or other casualty during the continuance of this lease, to such an extent that the same cannot be restored to as good condition as the same are in prior to such damage within ninety days thereafter, either the lessee or the lessors shall have the right to cancel and terminate this lease, rents to be adjusted to the date of the damage, destruction, or casualty; and if such repairs can be made within the period of ninety days, the lessor agrees to repair the premises with due diligence and in the meantime the rent shall be reduced in such proportions as will reasonably compensate the lessee for the space not in proper condition during such repair.

.  .  .  .  .

"The lessee does hereby covenant with the lessor that he will pay unto the lessor the rent hereby reserved, at the times herein provided, and will also keep all and singular, the premises in such repair, order and condition as the same are in at the commencement of said term, or may be put in during the continuance thereof, except those portions of the premises which the lessor agrees to maintain and will not make or suffer any waste of the premises, and that no unlawful, improper, or offensive trade or business shall be carried on, in or upon the premises; and that the lessor or their agents, at reasonable times, may enter to view the premises and to make repairs which they may find necessary to protect the interest in said estate, it being understood and agreed, however, that the lessor shall not be bound to make any repairs or improvements at their own expense, except repairs to roof, outer walls, ceilings, downspouts, support for floors, window casings, window frames and structural portions of the demised premises, or to be liable for any damage by water or otherwise to any merchandise or property on the premises; that repairs and improvements of whatever nature inside or outside of the building, or on the demised premises, are to be made at the expense of the lessee, except as hereinbefore set forth."

There is nothing in this lease which makes inspection or repair of electrical wiring the lessor's responsibility. A substantial part of fire causation was placement of too large a fuse in the fuse box. Is there any provision in the lease which requires the lessor to maintain an inspection vigil on the fuse box to prevent the lessees from overfusing the electrical circuits? We think not. Is there any provision which mandates the lessor must inspect the electrical wiring in walls and ceilings? We think not. We conclude that the lease contemplates that plaintiffs will be responsible for maintenance of the electrical wiring rather than defendant.

The plaintiff purchased the business from the Davenports who had remodeled the premises for operation as an appliance sales and repair business. Plaintiffs just continued the operation of this business without any relevant change.

Under the totality of the facts of this case there simply are no warranties flowing from defendant to plaintiffs on which liability for the fire damage could be predicated.

Having concluded that there is no legal basis on which a judgment could be entered on the negligence theory or either alternative theory, it would be inappropriate to remand the case for more than entry of judgment for the defendant. This result renders moot all issues pertaining to the amount of damages awarded herein by the trial court.

The judgment of the district court is reversed with directions to enter judgment in favor of the defendant. The judgment of the Court of Appeals is affirmed as modified.